UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERRY DAVIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:20-cv-02765-JPH-DLP |
| | ) |
| DENNIS REAGLE, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Terry Davis is a prisoner at Pendleton Correctional Facility. His habeas petition challenges a prison disciplinary conviction for possession of a weapon under prison case number ISR 19-08-0046. For the reasons explained below, the habeas petition is **DENIED**.

**I. LEGAL STANDARD**

Prisoners in Indiana custody may not be deprived of good-time credits or credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: (1) the issuance of at least 24 hours advance written notice of the charge; (2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; (3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and (4) "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. BACKGROUND

### A. Disciplinary Proceeding

Officer B. Patrick initiated this disciplinary proceeding by submitting a Report of Conduct, which alleged: "I officer B. Patrick around 1900 was shaking down offender Davis, Terry #966898 5F-14 when I found a weapon inside the metal frame of the locker. Incident occur[r]ed 8-4-19." Dkt. 9-1. A photograph of the item confiscated from Mr. Davis' locker depicts a rod tied to a piece of string or rope. Dkt. 9-2.

Mr. Davis received written notice of the charge when he received the Screening Report. Dkt. 9-4. According to the Screening Report, Mr. Davis did not ask to call any witnesses, but he did request "video." *Id.* The Screening Report does not list a specific location or timeframe for the requested video. *Id.* The Screening Report was signed "Officer A. Parrott." *Id.*

A disciplinary hearing was scheduled for August 16, 2019. Dkt. 9-6. According to a Postponement of Disciplinary Hearing form, the hearing was continued because Mr. Davis requested "video . . . at the hearing." *Id.* Like the Screening Report, this form does not list a specific location or timeframe for the requested video. *Id.*

On August 23, 2019, Officer C. Cooke reviewed video evidence of the incident and a Report of Disciplinary Hearing Video Evidence Review form was

2

completed. The review form includes Officer Cooke's summary of the video. It states:

> Upon reviewing the incident that occurred for case ISR 19-08-0046 I, Officer C. Cooke, determined that to allow the offender to view the video would allow the offender to learn the limitations and capabilities of the facility's camera and open the facility to future safety, security and possible PREA offenses/incidents.
>
> 5:16 pm Custody staff arrive at the secured cell of 14-5F with a cart
>
> 6:09:01 Custody staff has completed the shake down and all the offenders property is loaded in cart and removed from the range.
>
> There is no audio for this video.

Dkt. 9-8.

A disciplinary hearing was ultimately held on August 27, 2019. Officer Cooke presided over the hearing. Dkt. 9-7. The Report of Disciplinary Hearing records Mr. Davis's comment as follows: "Did review video. I wanted camera from the time of visit to when packed out. They were planted." *Id.* Mr. Davis was found guilty. *Id.* He received a loss of 180 days earned-credit time and a demotion in credit-earning class. *Id.* The Report of Disciplinary Hearing states that the reason for the disciplinary hearing officer's decision was, "Offender became aggressive and vulgar. Weapon was found inside of a locker, not tossed in room. Hours of video are denied." *Id.*

Mr. Davis appealed his disciplinary conviction to the Facility Head and to the Final Reviewing Authority. *See* dkts. 9-10, 9-11. He argued that Officer Cooke "vindictively denied me opportunity to have case heard before impartial decisionmaker, viciously stating that she's my judge, juror, and executioner

while simultaneously denying me specific requested video evid[ence]." Dkt. 9-10. Mr. Davis also stated that he "requested specific timing of video evid[ence] to be reviewed (12:45 pm through approx. 4:[00] pm line movement) which would support my innocence & claims." *Id.* He explained that prior to the shake down, officers allowed other offenders to enter his cell. Those offenders had it out for him. They stole his property and planted contraband to be spotted in his cell. He claimed that he was prejudiced by Officer Cooke's decision to limit the review of video evidence to the time the officers conducted the search. *Id.*

Mr. Davis' appeals were denied. Dkts. 9-10, 9-12. In response to his facility appeal, a prison official stated, "I find no due process violations. [Conduct Report] is clear & supported by evidence. I reviewed and retained video from the time listed above & found no evidence to overturn guilty finding." Dkt. 9-10.

**B. Video Evidence**

Officer Cooke reviewed a segment of video from 5:16 pm to 6:09 pm. According to Officer Cooke's written summary, the video showed custody staff arrive at Mr. Davis' cell with a cart at 5:16 pm. At 6:09 pm, custody staff completed a shakedown of the cell, and all of Mr. Davis' property was loaded in a cart and removed from the range. *See* dkt. 9-8.

The second segment was from approximately 12:45 p.m. to approximately 4:00 p.m. The respondent has submitted this segment as a sealed, *ex parte* exhibit. Based on the Court's *in camera* review, the video shows an upper-level range in the prison, but it does not show other offenders entering cell numbered 14. Dkt. 19 (CD - manual filing).

4

### III. DISCUSSION

Mr. Davis raises three claims in his habeas petition.[1] First, he argues he was denied the right to exculpatory evidence when prison officials did not allow him to review the photograph of the confiscated item alleged to be a weapon. Dkt. 2 at p. 3. Second, he argues he was denied the right to present the video evidence of his range from approximately 12:45 p.m. (the time he presumably left the range for a visit) to the time his cell was searched, which he contends would have shown other inmates entering and exiting his cell, giving them the opportunity to plant the weapon. *Id.* at p. 5. Finally, he argues that he was denied the right to an impartial decisionmaker because Ms. Cooke allegedly served as both the screening and hearing officer. *Id.* at p. 4.

#### A. Photograph

The respondent argues that Mr. Davis waived this claim by failing to present it during his administrative appeals. The Court agrees.

Generally, Indiana prisoners challenging their disciplinary convictions may only raise issues in a petition for a writ of habeas corpus that were previously raised in a timely appeal to the Facility Head and then to the IDOC Final Reviewing Authority. *See* 28 U.S.C. § 2254(b)(1)(A); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles,* 288 F.3d 978, 981 (7th Cir. 2002).

---

[1] Respondent states without citation to the record that "Davis also claims that he is the victim of retaliation." Dkt. 9 at p. 12. This issue was briefed by the Respondent, but not identified in the Petition. *See id.* at pp 12-14. Because a retaliation claim was not raised by Mr. Davis, it need not be addressed further in this Order.

Mr. Davis did not raise this claim during his administrative appeals. *See* dkt. 9-10. His petition does not acknowledge this failure or argue that it should be excused for cause or to avoid a miscarriage of justice. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (a habeas petitioner's procedural default for failure to exhaust may be excused when the petitioner demonstrates cause for the default and prejudice resulting therefrom, or by convincing the court that a miscarriage of justice would result unless the court reviews the claim on the merits). Accordingly, his request for relief on this ground is **DENIED for failure to exhaust**.

### B. Video

Mr. Davis claims that he was denied the right to present exculpatory evidence when Officer Cooke refused to review surveillance video from his range between the time he left for a visit and the time his cell was searched. Dkt. 2 at p. 5.

Prisoners have a limited right to present witnesses and evidence in their defense, consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to requests for evidence and may deny requests that threaten institutional safety or requests that are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process only requires access to witnesses and evidence that are exculpatory. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the

reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 2011).

Here, the hearing officer watched the surveillance video that Mr. Davis identified—5:16 p.m. to 6:09 p.m.—before the hearing. Dkt. 9-8. At the hearing, Mr. Davis reportedly stated "I wanted camera from the time of visit to when packed out. They were planted." Dkt. 9-7. In his disciplinary hearing appeal with the facility Mr. Davis specified that he was seeking surveillance video from 12:45 p.m. through approximately 4:00 p.m. to be viewed. Dkt. 9-10. In response, the facility head reviewed the surveillance video for that timeframe. *Id.* The facility head denied the appeal stating that he "reviewed and retained video from the time listed above" which was 12:45 p.m. through approximately 4:00 p.m., and "found no evidence to overturn guilty finding." *Id.*

During his administrative appeal, Mr. Davis made an argument about what the video was likely to show. The Facility Head considered the argument, reviewed the video, and upheld the conviction. The Court has conducted *in camera* review of the surveillance video that was reviewed by the Facility Head. That video does not "directly undermine[] the reliability of the evidence in the record pointing to [the prisoner's] guilt," *Meeks*, 81 F.3d at 720, and therefore is not exculpatory, *id.*

The record reflects that Mr. Davis made a specific request during the administrative appeals process for surveillance video from 12:45 p.m. through approximately 4:00 p.m. to be considered. The Facility Head honored that request and affirmed the finding of guilt. Mr. Davis is not entitled to relief on his

claim relating to surveillance video from 12:45 p.m. through approximately 4:00 p.m. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (harmless error applies to the right to present exculpatory evidence in prison disciplinary proceedings); *Brenneman v. Knight*, 297 F. App'x 534, 538 (7th Cir. 2008) (holding there was no prejudice where the petitioner's exculpatory evidence was reviewed on administrative appeal and the disciplinary conviction was upheld). Accordingly, Mr. Davis' request for relief on this ground is **DENIED**.

### C. Impartial Decisionmaker

Mr. Davis alleges that he was denied the right to an impartial decisionmaker because Officer Cooke served as both his "screening officer" and his disciplinary hearing officer. He also says that Officer Cooke demonstrated bias by telling him that she would be his "judge, jury, and prosecutor for all his cases" about two weeks before the disciplinary hearing. Dkt. 2, p. 4.[2]

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at

---

[2] In his administrative appeals, Mr. Davis alleged that Officer Cooke told him that she would be his "judge, juror, and *executioner*." Dkt. 9-10.

8

666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Here, Mr. Davis has not overcome the strong presumption that Officer Cooke presided over the disciplinary hearing impartially. His claim that she was biased because she was both his "screening officer" and his hearing officer is unpersuasive.

A "screening officer" is also known as the "disciplinary review officer." *See* dkt. 9-9 (Disciplinary Code for Adult Offenders). This officer's role is to "review conduct reports and conduct Screening hearings in accordance with [the disciplinary code's] administrative procedures." *Id.* at p. 1. At the screening hearing, the officer advises the inmate of his rights, including his due process rights. *Id.* at 4-5.

According to the forms associated with this disciplinary proceeding, the disciplinary review officer who conducted the screening was Officer A. Parrot—not Officer Cooke. *See* dkts. 9-1; 9-4. Nevertheless, Mr. Davis alleges that Officer Cooke "forged Mr. Davis['] screening report by having screening officer A. Parrot to sign the report," dkt. 2, p. 4. Mr. Davis does not supply any evidence substantiating this claim or explaining how he would have personal knowledge regarding the screening process in this case.

Regardless, even if Officer Cooke served both as the screening officer and the disciplinary hearing officer, this would not show impermissible bias. The record is clear that Officer B. Patrick conducted the search, found the illegal

9

weapon in Mr. Davis' locker, and wrote-up the conduct report, dkt. 1, and thus conducted the investigation. Conducting the screening function in connection with a disciplinary charge is not the same as doing the fact investigation that led to the report of conduct.

Finally, Mr. Davis' claim that Officer Cooke was biased because she said she would be his "judge, jury, and prosecutor" is also unpersuasive. If true, this comment would be ill-advised and inappropriate. But a single off-hand comment is not clear evidence of dishonesty or a lack of integrity. *Hoskins v. McBride*, 13 F. App'x 365, 369 (7th Cir. 2001) (finding impartial decisionmaker where decisionmaker "made various comments to taunt and ridicule [petitioner] and to openly express his contempt for [petitioner]" and stated "you don't understand do you, [petitioner]? Face it … you can't win!"). *See also Davis v. Reagle*, No. 1:20-CV-02764-JMS-TAB, 2021 WL 5589128, at *4 (S.D. Ind. Nov. 30, 2021) (finding no clear evidence of dishonesty or lack of integrity under the same circumstances involving the same individuals). Accordingly, Mr. Davis' request for relief on this ground is **DENIED**.

## IV. CONCLUSION

For the reasons explained above, the petition for a writ of habeas corpus is **DENIED**. Final judgment in accordance with this Order shall now issue.

**SO ORDERED**.

Date: 10/31/2022

                                      *James Patrick Hanlon*

                                      James Patrick Hanlon
                                      United States District Judge
                                      Southern District of Indiana

Distribution:

TERRY DAVIS
966898
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov